James R. STRINGER, Petitioner,

v.

Gene A. SCROGGY, Commissioner, Mississippi Department of Corrections, et al., Respondents.

Civ. A. No. J87–0105(B).

United States District Court,
S.D. Mississippi,
Jackson Division.

Nov. 20, 1987.

Dennis Sweet and Kenneth J. Rose, Jackson, Miss., James E. Ostgard, St. Paul, Minn., for petitioner.

Marvin White, Asst. Atty. Gen., Jackson, Miss., for respondents.

## MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

This cause is before the Court on Petition of James R. Stringer for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, *et seq.* Petitioner was convicted of capital murder in the death of Nell McWilliams and sentenced to death on September 24, 1982, by the Circuit Court for the First Judicial District of Hinds County, Mississippi. The trial court, after a hearing, denied a subsequent Petition for Writ of Error Coram Nobis and the Mississippi Supreme Court, in *Stringer v. State,* 454 So. 2d 468 (Miss.1984) affirmed the conviction, sentence and denial of the writ. There-

after, the Supreme Court of the United States denied a petition for writ of certiorari. *Stringer v. Mississippi*, 469 U.S. 1230, 105 S.Ct. 1231, 84 L.Ed.2d 368 (1985). Petitioner next received leave to and filed a motion to vacate or set aside judgment and sentence in its entirety. In *Stringer v. State*, 485 So.2d 274 (Miss.1986) (rehearing denied) the Mississippi Supreme Court denied that motion and the United States Supreme Court refused another petition for writ of certiorari in *Stringer v. Mississippi*, — U.S. ——, 107 S.Ct. 327, 93 L.Ed.2d 300 (1986). This is Petitioner's first writ for habeas corpus filed in this Court and in it he alleges that he was convicted and sentenced in violation of his constitutional rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments. This Court held an evidentiary hearing to allow further inquiry into Petitioner's claims that he was denied effective assistance of counsel both at trial and on appeal. *See Wilson v. Butler*, 813 F.2d 664 (5th Cir.1987).

It is unnecessary, for purposes of this opinion, to recite in detail the facts presented at trial[1] from which the jury concluded that Petitioner was guilty of the murder of Nell McWilliams. The prosecution's case against Petitioner rested upon the eye witness testimony of two of the five alleged participants in the crime, Rhonda Brock and Mike Meddars. They testified that the plot to rob Nell and Ray McWilliams of money and valuables which they kept in their home was initiated by Petitioner who also decided that the McWilliams, who knew Petitioner, must be killed to prevent detection of the crime. Petitioner, along with his son Jimbo Stringer and girlfriend Tammy Williams, maintained their innocence and, with the collaborative testimony of three other friends, offered an alibi at trial.[2] Petitioner testified in his own defense at the guilt phase of the bifurcated proceeding and Jimbo and Tammy, both of whom at that time were under indictment for the same crime, took the stand on behalf of Petitioner at the guilt phase. All

three were represented by Sam Wilkins, a personal friend of Petitioner, who had represented Petitioner previously on other matters and by James Nelson, Wilkins' associate.

## INEFFECTIVENESS OF TRIAL COUNSEL CLAIM

### A. Failure to Present Mitigating Evidence.

Petitioner alleges numerous grounds in support of his contention that his conviction and/or his sentence should be vacated. The evidentiary hearing held by this Court was limited to the issues of effectiveness of trial and appellate counsel. Called as witnesses were trial counsel Wilkins and Nelson and appellate counsel Harry Kelly.

The standard for evaluating the effectiveness of counsel was enunciated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S.Ct. at 2064. The *Strickland* court emphasized that in evaluating the effectiveness of counsel, necessarily by hindsight, the Court should evaluate the

---

1. A full discussion of those facts appears in *Stringer v. State*, 454 So.2d 468, 471–73 (Miss. 1984).

2. Petitioner was tried separately from and prior to his son Jimbo. *See Stringer v. State*, 491 So.2d 837, 838 (Miss.1986)

reasonableness of counsel's performance in light of the circumstances as they existed at the time. *Id.* at 688–89, 104 S.Ct. at 2064–65.

> Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). Thus, an analysis of the effectiveness of counsel is not an exercise in second guessing but an effort to determine whether counsel provided reasonably effective assistance such that the defendant received the fair trial to which he is constitutionally entitled.

Petitioner alleges that Wilkins' performance fell below the constitutional standard in several particulars, many of which center around Wilkins' conduct during the sentencing phase of Petitioner's trial. Specifically, Petitioner alleges trial counsel failed to conduct an investigation for mitigating evidence, failed to present a case in mitigation, failed to explain to the jury the inapplicability of aggravating circumstances and the manner in which they should weigh aggravating and mitigating circumstances and failed to perform sufficient research prior to sentencing. In sum, Petitioner asserts that Wilkins' failure to present any case in mitigation and his decision to make only a brief argument against imposing the death penalty denied Petitioner of his right to counsel at the sentencing phase.

At the sentencing phase of the trial, neither the State nor Defendants offered additional evidence. Wilkins' argument to the jury in summary was that he and his client, the Defendant, had to accept the verdict of guilty but that if any juror had had any qualms about finding Defendant guilty, he should not vote in favor of the death penalty.

At the hearing, Wilkins testified that the bulk of his efforts were directed toward the guilt phase of trial. He considered the prosecution's case to be weak because he believed that Brock and Meddars were not credible witnesses. Because he knew Petitioner personally, Wilkins felt it was unnecessary to perform an investigation into possible mitigating evidence. On personal knowledge, Wilkins was aware that Petitioner had seen action in Korea, that he had medical problems, that he was a family man and a business man who was generous with his time and money. Wilkins was able to testify on cross-examination that he knew various members of Petitioner's family who were present at trial and could have testified in mitigation.[3] Wilkins asserted that he knew how to present a case in mitigation and that he had directed his associate, Jim Nelson, to research death penalty cases in preparation for Petitioner's trial.

Wilkins candidly admitted on the stand that he was shocked and devastated when the jury returned a guilty verdict. He was unable to recall many of the specifics of what transpired after the Petitioner was found guilty and how the decision not to present a case in mitigation was reached. However, Wilkins stated that he would not quarrel with any version of those events offered by his former associate, Nelson.

Nelson testified that he had discussed with Petitioner and members of his family the need to present a case in mitigation and that that might include testimony concerning Petitioner's war record, medical problems and that he was a devoted family man. At the conclusion of the guilt phase, according to Nelson, he and Wilkins conferred with Petitioner in a witness room and explained to him the factors relevant to mitigation. They discussed which family members could be put on the stand and that they would be competent to testify as to Petitioner's family nature, his war

---

**3.** In support of the Petition for Writ of Habeas Corpus, several affidavits of family and friends who would have testified in mitigation were submitted. By stipulation of the parties these were admitted into evidence at the hearing, although the state refused to stipulate to the admissability of parts of the affidavit of Petitioner's sister, Peggy King.

record and his medical problems. Petitioner told Wilkins and Nelson that he did not want to put his family through that ordeal. Nelson testified that he and Wilkins attempted to dissuade the Petitioner from this course of action. Nelson specifically remembered that Wilkins told Petitioner that it would be foolish to prevent his family from testifying but, according to Nelson, Petitioner was "quite adamant." Petitioner did not take the stand himself to confirm or deny this version of events.

■ The failure to present a case in mitigation or call witnesses is not per se ineffective assistance of counsel. *See Bell v. Lynaugh,* 828 F.2d 1085, 1088 (5th Cir. 1987); *Wilson v. Butler,* 813 F.2d at 671–72; *Moore v. Maggio,* 740 F.2d 308, 315–16 (5th Cir.1984) (attorney's testimony showed he made a strategic decision not to present case in mitigation due to petitioner's prior record of violent conduct which could be used to impeach character witnesses); *Green v. Zant,* 738 F.2d 1529 (11th Cir. 1984). In *Mitchell v. Kemp,* 762 F.2d 886, 889–90 (11th Cir.1985), the court rejected the claim of ineffectiveness for failure to present mitigating evidence where the absence of mitigating evidence was the result of strategic choices made by counsel who conducted a less than complete investigation, based upon his client's urging. The attorney in *Burger v. Kemp,* —— U.S. ——, ——, 107 S.Ct. 3114, 3123, 97 L.Ed.2d 638, 655 (1987) conducted an extensive investigation. He talked with his client's mother on several occasions, a psychologist, the co-defendant and some of the defendant's co-workers. The United States Supreme Court concluded that "based on these interviews, Leaphart [petitioner's counsel] made the reasonable decision that his client's interest would not be served by presenting this type of evidence." *Id.* at ——, 107 S.Ct. at 3124, 97 L.Ed.2d at 655. The Court concluded that counsel, having made this judgment, could reasonably determine that there was no need to undertake further investigation to locate witnesses who would make statements about the petitioner's past. *Id.* at ——, 107 S.Ct. at 3125, 97 L.Ed.2d at 657. Cf. *Bell,* at 1088–89 (coun-

sel acted reasonably in not investigating petitioner's current mental state).

■ Similarly, counsel is not ineffective for following the instructions of his client concerning how to or whether to present a case in mitigation. In a pre-*Washington v. Strickland* case, the petitioner instructed his counsel not to present evidence of his troubled youth at the penalty phase of his trial. *Autry v. McKaskle,* 727 F.2d 358, 360 (5th Cir.1984). The Fifth Circuit noted the pending review by the United States Supreme Court of *Washington v. Strickland,* and stated that "[b]y no measure can Autry block his lawyer's efforts and later claim the resulting performance was constitutionally deficient." *Id.* at 361. In *Lowenfield v. Phelps,* 817 F.2d 285 (5th Cir. 1987), the petitioner discussed with counsel, prior to the sentencing hearing, whether psychiatric testimony should be put on in mitigation. The petitioner was strongly opposed to the presentation of such testimony and he persuaded his counsel that for tactical reasons this decision was sound.

> Counsel, at the federal habeas hearing, explained that he believed that the jury had doubts about Lowenfield's guilt that had been difficult for them to resolve. He and Lowenfield concluded that the presentation of psychiatric testimony would telegraph an admission to the jury that Lowenfield had committed the crime and remove any remaining doubts by the jury of Lowenfield's guilt; they thought that preserving the possible doubt of guilt was more likely to benefit petitioner than psychiatric testimony.

*Id.* at 290. Counsel's performance was also attacked for his failure to call petitioner's relatives to testify on his behalf at the sentencing phase. The Fifth Circuit upheld the district court's decision to credit the attorney's testimony that "the petitioner did not wish his relatives to be present at the trial[.]" *Id.* at 291. In *Lowenfield,* trial counsel was not held to be ineffective where he followed the instructions of his client.

■ Under the *Washington v. Strickland* standard, the burden is on the petitioner seeking habeas relief to demonstrate

that his counsel's performance was sufficiently deficient to undermine confidence in the outcome and that he was prejudiced by this deficient representation. Applying those standards, and the relevant case law, to the evidence adduced at the hearing, the Court reaches the following conclusions as they apply to the sentencing phase of Petitioner's trial. The allegations concerning failure to investigate for mitigating evidence and failure to perform sufficient research are simply not borne out by the testimony. Wilkins testified that he was well aware of Petitioner's background due to his personal acquaintance with him and Nelson asserted that witnesses had been interviewed. Also, both Nelson and Wilkins testified that Nelson performed the necessary legal research. Moreover, the failure to present a case in mitigation was not the result of ineffectiveness because the decision was made at petitioner's urging; under *Lowenfield v. Phelps* and *Mitchell v. Kemp,* this does not constitute ineffective assistance of counsel. Similarly, the failure to argue the aggravating and mitigating circumstances and the decision to make the closing argument that was made is reasonable under *Lowenfield,* 817 F.2d at 290 (alibi defense used). Finally, the Court concludes that, given the overwhelming evidence of Petitioner's guilt, even if Wilkins was ineffective at the sentencing phase, the result would not have been different.

**B. Failure to Prepare Witnesses.**

■ Turning now to the remaining ground of alleged ineffectiveness, the Court reaches the following conclusions. Petitioner alleges that Wilkins was ineffective in that he failed to adequately prepare Petitioner and his witnesses for their testimony. In this case, because an alibi was offered the entire question was witness credibility. Although Petitioner believes in retrospect that he might have been better prepared by this counsel, the effectiveness of his testimony and that of the witnesses who testified on his behalf, turns simply

upon whether or not the jury chose to believe them. The Court is of the opinion, having reviewed the entire record, that the defense witnesses were adequately prepared to testify in detail concerning the alibi. Thus, the Court concludes that preparation by counsel was sufficient to constitute effective assistance and that in any event the prejudice component cannot be overcome.

**C. Failure to Request Presentence Report.**

■ Petitioner next contends that Wilkins was ineffective because he failed to request a presentence report. However, in *Coleman v. State,* 378 So.2d 640, 647 (Miss. 1979), the Mississippi Supreme Court stated that such a failure is not ineffective assistance because a capital defendant is not automatically entitled to presentence reports under *Miss. Code Ann.* § 47–7–9(3)(a) (1981) which clearly states that presentence reports are given only at the discretion of the circuit judge. No prejudice can be shown and consequently, this claim is without merit.

**D. Failure to Rehabilitate Jurors Disqualified under *Witherspoon.***

■ Petitioner asserts that his trial counsel was ineffective for failure to rehabilitate or object to the exclusion of veniremen who expressed scruples against the death penalty.[4] The standard for exclusion of jurors with scruples against the death penalty was articulated by the United States Supreme Court in *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

... nothing we say today bears upon the power of a State to execute a defendant sentenced to death by a jury from which the only veniremen who were in fact excluded for cause were those who made it unmistakably clear (1) that they would automatically vote against the imposition of capital punishment ... or (2) that their attitude toward the death penalty would

4. Specifically, these are jurors Eagle (Trans. 241, 354); Robinson (Trans. 242, 354); and

Armstrong (Trans. 287, 356).

prevent them from making an impartial decision as to the defendant's guilt. *Witherspoon,* 391 U.S. at 522, n. 21, 88 S.Ct. at 1777, n. 21.

Petitioner claims that he was subject to ineffective assistance of counsel due to Wilkins failure to rehabilitate or object to jurors excluded for cause by the prosecution based on their opposition to the death penalty. The *Strickland* opinion emphasizes deference to trial counsel's decisions and there is little direct authority for the proposition that trial counsel has a duty to rehabilitate jurors who have scruples against the death penalty. In *O'Bryan v. Estelle,* 714 F.2d 365, 378 (5th Cir.1983), *cert. denied,* 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984), the Court reviewed in detail the voir dire of a particular juror to determine whether that juror's exclusion for cause was in violation of *Witherspoon.* The United States Court of Appeals for the Fifth Circuit stated that voir dire of a juror "may be the quintessential example of a situation in which it would be appropriate for an appellate court to give at least some deference to the trial judge, who has had the opportunity to observe the juror as he or she struggles to give an honest answer to difficult questions" concerning the death penalty. *Id. See also Wicker v. McCotter,* 783 F.2d 487, 493 (5th Cir.1986). The *O'Bryan* decision turns on whether the defendant had a fair and impartial trial, not the issue of whether his trial counsel's conduct in rehabilitation of the juror constituted effective assistance of counsel.

In *Moore v. Maggio,* 740 F.2d 308, 317 (5th Cir.1984), petitioner contended that his trial counsel's failure to rehabilitate four veniremen who the prosecution had successfully challenged for cause constituted ineffective assistance of counsel. The Court of Appeals for the Fifth Circuit's review of the record led them to conclude that trial counsel did attempt to rehabilitate without success and that his failure to rehabilitate a fourth juror who had stated unequivocal opposition to the death penalty did not constitute ineffective assistance of counsel. A review of the voir dire of jurors Eagle, Robinson and Armstrong does not show ambiguous opposition to the death

penalty which might require an attempt to rehabilitate. Due to the dearth of authority establishing a duty to rehabilitate or object, this Court cannot say that trial counsel's conduct constituted ineffective of counsel. Moreover, this purported error, in and of itself, is not sufficient to show prejudice as required by *Washington v. Strickland.*

**E. Conflict of Interest of Trial Counsel.**

■ Petitioner alleges that the writ should be granted because his trial counsel had a conflict of interest which caused him to be ineffective. To show a violation of his Sixth Amendment rights, a petitioner who raised no objection to the multiple representation at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). *See also Baty v. Balkcom,* 661 F.2d 391, 395 (5th Cir.1981) (speculative conflict does not violate Sixth Amendment), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982); *Foxworth v. Wainwright,* 516 F.2d 1072, 1077 n. 7 (5th Cir.1975) ("irrelevant or merely hypothetical" conflicts of interest insufficient). Once the existence of an actual conflict is established, prejudice is presumed and need not be proven. *Cuyler,* 446 U.S. at 349–50, 100 S.Ct. at 1718–19; *United States v. Benavidez,* 664 F.2d 1255, 1259 (5th Cir.), *cert. denied,* 457 U.S. 1135, 102 S.Ct. 2963, 73 L.Ed.2d 1352 (1982). However, prejudice cannot be presumed absent the threshold showing of an actual conflict which requires the petitioner to point to specific instances in the record, make a factual showing of inconsistent interest, and demonstrate that his counsel "made a choice between possible alternative courses of action—helpful to one client but harmful to the other." *United States v. Mers,* 701 F.2d 1321, 1328 (11th Cir.), *cert. denied,* 464 U.S. 991, 104 S.Ct. 482, 78 L.Ed.2d 679 (1983). *Accord Willie v. Maggio,* 737 F.2d 1372, 1394–95 (5th Cir.1984) (failure to adduce evidence that alleged conflict of interest affected counsel's per-

formance resulted in denial of habeas relief).

■ Petitioner was represented by Wilkins at trial who also agreed to represent his son Jimbo Stringer and girlfriend Tammy Williams who were co-defendants. "It is settled that '[r]equiring or permitting a single attorney to represent co-defendants, often referred to as joint representation, is not per se violative of constitutional guarantees of effective assistance of counsel.'" *Burger v. Kemp*, —— U.S. ——, ——, 107 S.Ct. 3114, 3120, 97 L.Ed.2d 638, 650 (1987) (*quoting Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426 (1978)). Thus, it is incumbent upon the Petitioner to establish an actual conflict with specific reference to instances in the record which show that Wilkins' performance was adversely affected. Petitioner attempts to do this by pointing to the prosecution's closing argument. Because the witnesses who took the stand in support of the alibi defense had testified that Sam Wilkins represented them [5], the prosecution, in an attempt to discredit those witnesses, stated that there were many unanswered questions in the case and one of the biggest ones was "why did every single witness choose Sam Wilkins as their lawyer?"

Petitioner now argues that Wilkins' actual representation of the co-defendants, along with his putative representation of the other witnesses, was exploited by the prosecution to his detriment. At the hearing before this Court, Wilkins testified that he discussed the potential conflict of interest with Petitioner, Jimbo and Tammy Williams. Since the defense was an alibi in which they all were involved, he told them that if they were telling him the truth, he had no conflict but if they had committed the murders he would have a conflict. Wilkins emphasized that he had five consistent alibi witnesses who never changed their story and the only defendant represented by him who has ever admitted involvement in the crime was Tammy Williams by her entry of a plea of guilty after the trials of Petitioner and his son.

Petitioner also claims that Wilkins' conflict of interest is demonstrated by his failure to argue that Jimbo was more blameworthy than his father since the evidence tended to establish that Jimbo was the triggerman. However, Wilkins himself testified that "even in retrospect" he would not have made this argument because it undermined the credibility of the alibi and it would have made it appear to the jury that Petitioner was willing to sacrifice his son to save himself.

In cases such as this one, a "common defense ... gives strength against a common attack." *Burger*, —— U.S. at ——, 107 S.Ct. at 3120, 97 L.Ed.2d at 650 (*quoting Glasser v. United States*, 315 U.S. 60, 92, 62 S.Ct. 457, 475, 86 L.Ed. 680 (1942) (dissenting opinion by Justice Frankfurter)). It is apparent from Wilkins' testimony that he made a strategic decision to present only one defense, a consistent alibi, and, under those circumstances, representing all of the defendants and witnesses gave Wilkins a tighter rein over the situation. In evaluating conflicts claims, trial courts "necessarily rely in large measure upon the good faith and good judgment of defense counsel", *Cruyler*, 446 U.S. at 347, 100 S.Ct. at 1717, and the Court credits Wilkins' testimony that he discussed the potential conflict with his clients. Additionally, though arguably Jimbo could be considered more deserving of punishment, Wilkins would not have and did not adopt this line of defense, recognizing the possible harm which could result to his client if he chose to lay the blame upon his son. Thus, Petitioner has failed to demonstrate that Wilkins chose between alternative arguments helpful to one client but harmful to the other.

**F. Conflict of Interest of Appellate Counsel.**

■ Petitioner also claims to have been denied effective assistance of appellate

---

5. There are several references in the record to testimony and argument to the effect that Sam Wilkins represented James Stringer, Jimbo Stringer, Tammy Williams, Elisa Dawn Johnson (Jimbo's girlfriend), Shiela Keacher, and Sharon Stringer (Petitioner's daughter). Trans. at 929, 946, 994, 1002–04, 1042–43, 1079–1109, 1250, 1290, 1334–36.

counsel due to conflict of interest. After Petitioner's trial, Harry Kelly was retained to represent Petitioner on his direct appeal and on his petition for writ of error coram nobis and to represent Jimbo at his trial. At the hearing before this Court, Kelly stated that he did not see a conflict of interest between father and son and did not raise this issue with his clients. Kelly was "locked into" the record as developed at trial on Petitioner's appeal to the Mississippi Supreme Court. At the sentencing phase of Jimbo's trial, Kelly admitted that he argued that Jimbo murdered Nell McWilliams due to the psychological dominance of his father. But Kelly also testified that he never consciously decided not to raise an issue in Petitioner's appeal because he thought it might hurt his son. Habeas counsel for Petitioner questioned Kelly intensely on his decision to raise some issues on appeal for Jimbo Stringer which he did not raise on Petitioner's appeal.[6] Kelly testified that he chose to focus only on what he considered to be the strongest arguments for Petitioner's appeal. "This process 'winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.'" *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986) (*quoting Jones v. Barnes*, 463 U.S. 745, 751–52, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983)).

In support of his contention that Kelly's concurrent representation of Petitioner on appeal and his son at trial gave rise to an actual conflict of interest, Petitioner cites two Florida Supreme Court cases which arose out of the same criminal trial. *Dougan v. Wainwright*, 448 So.2d 1005 (Fla. 1984); *Barclay v. Wainwright*, 444 So.2d 956 (Fla.1984). These cases bear a superficial similarity to the facts before this Court in that one attorney represented one client co-defendant at trial while representing the second client co-defendant on appeal. However, in *Dougan* and *Barclay* there was credible evidence that counsel slighted

his representation of one defendant to benefit the other whose father was paying the legal bills for both. Even after a full evidentiary hearing, Petitioner has been unable to present facts, and not mere inferences, to show that Kelly had an actual conflict of interest which rendered him ineffective.

## ISSUES PROCEDURALLY BARRED

It is well settled in federal habeas corpus law that a federal court will not review the merits of any lower court ruling resting on an adequate and independent state ground, absent a showing of cause or prejudice. *U.S. v. Frady*, 456 U.S. 152, 160, 102 S.Ct. 1584, 1590, 71 L.Ed.2d 816 (1982); *Engle v. Isaac*, 456 U.S. 107, 128, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87–90, 97 S.Ct. 2497, 2506–2508, 53 L.Ed.2d 594 (1977). Usually the adequate and independent ground arises from a state court's invocation of a procedural bar, most often the result of the petitioner's failure to fully preserve his claims for review. Generally, a state's use of procedural bars is entitled to federal deference provided they were first, in existence at the time of a party's state direct appeal, *see Granviel v. Estelle*, 655 F.2d 673, 679 (5th Cir.1981), and second, they are "strictly or regularly followed", *Hathorn v. Lovorn*, 457 U.S. 255, 263, 102 S.Ct. 2421, 2426, 72 L.Ed.2d 824 (1982) (quoting *Barr v. City of Columbia*, 378 U.S. 146, 149, 84 S.Ct. 1734, 1736, 12 L.Ed.2d 766 (1964)).

Because his case was appealed prior to the enactment of the Mississippi Collateral Relief Act, *Miss. Code Ann.* § 99–39–21(6), (West Supp.1986), Petitioner contends that the statute which codifies the procedural bars should not be applied to him retroactively. However, the Mississippi Supreme Court has held that because the statute is merely a codification of existing law, it can be applied to prisoners tried prior to its effective date. *See Dufour v. State*, 483 So.2d 307, 308 (Miss.1985). Under the aforementioned rules[7] the balance of Peti-

---

**6.** Habeas counsel also offered in evidence at the hearing briefs prepared by Kelly.

**7.** In *Edwards v. Thigpen,* 595 F.Supp. 1271 (S.D. Miss.1984) this Court found that the state court's

tioner's claims are discussed in light of the procedural bar.

### A. Additional Alleged Bases for Ineffectiveness Claims.

Three of the ineffectiveness claims come within the ambit of the procedural bar: trial counsel's failure to move for a life sentence at the end of the guilt phase; failure to object to the admission into evidence of the plea agreements of Meddars and Brock and; failure to preserve issues at trial. In addition to these claims being procedurally barred, the Court notes that trial counsel agreed to the admission of the plea agreements and thus the failure to object was not merely inadvertent. The Court is also of the opinion, as to all three grounds, that even if these actions constituted ineffective assistance of counsel, Petitioner was not prejudiced thereby. As previously stated, the Court has reviewed in detail the entire record and is of the opinion that Petitioner was ably represented at his trial.

### B. Evidentiary Rulings of Trial Court.

██ The remaining grounds raised in support of the Petition for writ of Habeas Corpus are procedurally barred but nonetheless merit brief discussion. Petitioner contends that the trial court admitted incompetent, prejudicial and irrelevant evidence; specifically, first, cumulative pictures of the victims; second, evidence of previous wrongs committed by the Petitioner; third, that there was a gun in Petitioner's possession at the time of his arrest and; fourth, that Petitioner refused to take a polygraph. The second and third grounds were not raised before the state court and are not of federal constitutional dimensions and therefore cannot be properly considered. The first and fourth grounds were heard by the Mississippi Supreme Court and held to be procedurally barred. *See Stringer v. State*, 485 So.2d

274, 275 (Miss.1986) (cumulative pictures of victims); *Stringer v. State*, 454 So.2d 468, 473–74 (1984) (refusal to take polygraph).

### C. Prosecutorial Misconduct.

██ Petitioner alleges various instances of prosecutorial misconduct as grounds for reversing his conviction. *See Berger v. United States*, 295 U.S. 78, 84–88, 55 S.Ct. 629, 631–633, 79 L.Ed. 1314 (1934). However, a claim of improper jury argument by the state does not present a claim of constitutional dimensions unless it is so prejudicial as to render petitioner's trial fundamentally unfair within the meaning of the Fourteenth Amendment due-process clause. To show prejudice to his substantive rights, a Petitioner must demonstrate either persistent and pronounced misconduct or that the evidence was so insubstantial that but for the remarks no conviction would have occurred. *Felde v. Blackburn*, 795 F.2d 400, 403 (5th Cir. 1986). The Court is of the opinion, on review of the entire record at both the guilt and sentencing phases, that the alleged misconduct, which allegedly involved the use of photos and invective, the arguments concerning aggravating circumstances, the appropriateness of mercy and whether or not the jury was the final authority, represent neither persistent and pronounced misconduct nor, in this case, was the evidence so insubstantial that the conviction would not have occurred but for the prosecutor's remarks. Moreover, these claims are procedurally barred. *Stringer*, 485 So.2d at 275.

### D. Other Claims.

Petitioner alleges that the exclusion of persons under the age of 21 and of blacks from the jury constituted prosecutorial misconduct but concedes that these claims were not raised on direct appeal. Thus, Petitioner must be held to a procedural default for not raising these claims at the

---

practice of barring on post-conviction review any claims not raised on direct appeal was novel and entitled to prospective validity only from the date of the State Supreme Court's ruling in ·*Edwards*. *Edwards* was clarified and limited in *Johnson v. Thigpen*, 623 F.Supp. 1121 (S.D.Miss.

1985) to those cases where the direct appeal to the Mississippi Supreme Court was taken prior to March 23, 1983, the date of the *Edwards* decision. This line of authority does not apply to Petitioner because although he was tried in 1982, the direct appeal was not had until 1984.

previous state post-conviction proceedings. *Stringer*, 485 So.2d at 275.

Petitioner contends that his right to a fair trial was violated by the exclusion of jurors who oppose the death penalty. This issue was not raised on direct appeal and held to be procedurally barred in the state court post-conviction petitions. Thus it must be barred as well here. *Stringer*, 485 So.2d at 275. Even if this claim were not barred, it is clearly without merit. *Lockhart v. McCree*, 476 U.S. 162, 177, 106 S.Ct. 1758, 1766, 90 L.Ed.2d 137, 150 (1986).

■ Petitioner asserts that the sentencing instructions were unconstitutional in that robbery could be considered as an aggravating circumstance when it was also an element of capital murder. This claim was held to be procedurally barred by the Mississippi Supreme Court on post-conviction review. The Court of Appeals for the Fifth Circuit in *Wilson v. Butler*, 813 F.2d 664, 673 (5th Cir.1987) reiterated its previous holding that premising the death penalty upon an aggravating circumstance that duplicates an element of a crime does not violate the Eighth Amendment. *See also Welcome v. Blackburn*, 793 F.2d 672, 676–77 (5th Cir.1986). Accordingly, even if this claim were not procedurally barred, it is without merit.

The next issue raised by Petitioner is that the jury's finding of the heinous, cruel and atrocious aggravating circumstances resulted in an arbitrarily imposed sentence. At the outset, the Court notes that this claim is procedurally barred. *Stringer*, 485 So.2d at 275. Even if this claim were not procedurally barred it is without merit. *See Johnson v. Thigpen*, 806 F.2d 1243, 1245–49 (5th Cir.1986).

■ Petitioner contends that the trial court's failure to give a limiting instruction on the aggravating circumstance of murder to avoid lawful arrest is grounds for granting the writ. This contention is procedurally barred in that Mississippi Supreme Court Rule 42 requires that such an instruction be offered at trial in order for the claim to be raised on direct appeal.

■ Petitioner asserts that the trial court's instructions on aggravating and mitigating circumstances were unconstitutional in that they made the death penalty mandatory. Again, this claim is procedurally barred as no objection was raised at trial or on direct appeal. *Stringer*, 485 So.2d at 275.

The instructions are also alleged to be deficient in that the instructions on mitigating circumstances failed to give proper weight to general mitigating evidence. No alternate instruction was offered at trial nor was any objection raised at trial or on appeal. The issue was held to be procedurally barred by the state court and is also barred under the applicable rule. *Stringer*, 485 So.2d at 275; Miss.Sup.Ct.R. 42.

Petitioner next contends that the trial court's failure to instruct the jury, as requested, on intent and that mitigating circumstances need not be proven beyond a reasonable doubt violated his rights as secured by the Eighth and Fourteenth Amendments. As to the mitigating circumstances instruction which was refused by the Court, such an instruction would not have affected the outcome, in light of the absence of a closing argument on mitigating circumstances. The Court also notes that this claim is procedurally barred in that it was not raised on direct appeal. *Stringer v. State*, 454 So.2d 468 (Miss. 1984). The proffered intent instruction traces the language of *Enmund v. Florida*, 458 U.S. 782, 797, 102 S.Ct. 3368, 3376, 73 L.Ed.2d 1140 (1982), but its refusal was not raised on direct appeal and was therefore held to be procedurally barred on collateral review by the Mississippi Supreme Court. *Stringer*, 485 So.2d at 275. Even if the claim were not barred, it is without merit. There is no requirement that a jury find the existence of these salient factors. In *Cabana v. Bullock*, 88 L.Ed.2d 704, 716, 474 U.S. 376, 385, 106 S.Ct. 689, 697, (1986), the United States Supreme Court stated that intent findings could be made by a jury, a trial judge or an appellate court from the record. The Mississippi Supreme Court made the equivalent of required *Bullock* findings in its opinion on the direct

367

appeal. *Stringer v. State,* 454 So.2d 468, 478–79 (Miss.1984).

The trial court, according to Petitioner, should have instructed the jury on manslaughter at the guilt phase of his trial. This claim was held to be procedurally barred by the Mississippi Supreme Court for failure to offer such an instruction at trial or raise the issue on direct appeal. *Stringer,* 485 So.2d at 275. That bar is honored here. In addition, the Court notes that such an instruction might be inconsistent with an alibi defense.

Petitioner contends that the Mississippi capital sentencing scheme as a whole is unconstitutional. This claim is procedurally barred for failure to raise it at trial or on direct appeal. *Stringer,* 485 So.2d at 275. Moreover, the Court of Appeals for the Fifth Circuit has rejected an analogous argument. *See Johnson v. Cabana,* 818 F.2d 333, 344 (5th Cir.1987).

Petitioner challenges the constitutionality of the lethal gas method of execution used by the State of Mississippi. This claim was held to be procedurally barred by the state court as it was not raised on direct appeal. *Stringer,* 485 So.2d at 275. Were it not procedurally barred, it would still be without merit as this method of execution has been held to be constitutional. *See Gray v. Lucas,* 710 F.2d 1048, 1061 (5th Cir.1983); *Billiot v. State,* 454 So.2d 445, 464 (Miss.1984).

Finally, Petitioner contends that the post-conviction relief provided for by Mississippi Collateral Relief Act, *Miss.Code Ann.* § 99–39–4, *et seq.* (West Supp.1986) is inadequate. Despite two post-conviction considerations of Petitioner's claims, this issue has never before been raised. Thus, is it procedurally barred.

On July 29, 1987, prior to the evidentiary hearing, Petitioner moved to amend his petition. The substance of the amendment was an alleged violation of Petitioner's Sixth Amendment right to counsel and Fifth Amendment right to remain silent by the prosecution's use of a rebuttal witness, who Petitioner alleges was employed by the State of Mississippi to elicit incriminating statements while he was Petitioner's cellmate pending trial. The statements were alleged to have been obtained in the absence of counsel and without the required Miranda warnings. At the evidentiary hearing before this Court, habeas counsel withdrew the motion and thus this issue is not before the Court.

Based on the preceding, the Court finds that the Petition for Writ of Habeas Corpus should not be granted. However, the stay of execution previously granted by this Court remains in effect pending this Court's consideration of Petitioner's anticipated application for a certificate of probable cause. *See Johnson,* 818 F.2d at 344. In the event that an appeal from this decision is not taken, this Court will consider, on motion of the State, lifting the stay.