James R. STRINGER,
Petitioner–Appellant,

v.

Charles J. JACKSON, Interim Commissioner, Mississippi Dept. of Corrections, et al., Respondents–Appellees.

No. 88–4126.

United States Court of Appeals,
Fifth Circuit.

Dec. 22, 1988.

Rehearing and Rehearing En Banc
Denied Jan. 20, 1989.

James E. Ostgard, Minneapolis, Minn. (Court-appointed), Kenneth J. Rose, Dennis Sweet, Jackson, Miss. (Court-appointed), for petitioner-appellant.

Marvin L. White, Jr., Felicia C. Adams, Asst. Attys. Gen., Jackson, Miss., for respondents-appellees.

Before REAVLEY, JOHNSON and DAVIS, Circuit Judges.

REAVLEY, Circuit Judge:

James R. Stringer seeks the writ of habeas corpus to avoid his sentence of death by the Mississippi courts. We affirm the district court's denial of the writ.

## I. Background

On the evening of June 21, 1982, Ray McWilliams and his wife, Nell McWilliams, were murdered in their home in Jackson. The State's case against James Stringer rested upon the testimony of Rhonda Brock and Mike Meddars, two of the five alleged participants in the crime, who testified that Stringer initiated the plan to rob the victims in their home and then to kill them in order to prevent detection. Stringer, who maintained his innocence throughout the trial, offered an alibi in his defense at the guilt phase of the proceeding. His son, Jimbo, and his girlfriend, Tammy, both of whom were under indictment for the same crime at the time of trial, also testified at the guilt phase and corroborated his alibi. Attorney Sam Wilkins, a personal friend of Stringer's, and Wilkins' associate, James Nelson, represented Stringer as well as the son and girlfriend.

Stringer was convicted of capital murder in the death of Nell McWilliams and sentenced to death. The Mississippi Supreme Court unanimously affirmed. *Stringer v. State,* 454 So.2d 468 (Miss.1984), *cert. denied,* 469 U.S. 1230, 105 S.Ct. 1231, 84 L.Ed.2d 368 (1985). Subsequently that court denied Stringer's motions to vacate or set aside judgment and sentence. *Stringer v. State,* 485 So.2d 274 (Miss.), *cert. denied,* 479 U.S. 922, 107 S.Ct. 327, 93 L.Ed.2d 300 (1986). In response to the habeas corpus petition the federal district court stayed execution on January 12, 1987, held an evidentiary hearing on the issue of effective assistance of counsel, and then denied relief. *Stringer v. Scroggy,* 675 F.Supp. 356 (S.D.Miss.1987). The district court denied motion to alter or amend on January 22, 1988.

Stringer appeals on several grounds: (1) that prosecutorial misconduct caused the death sentence to be based on impermissible factors; (2) that the trial court's instructions at the sentencing phase violated the Eighth Amendment, improperly limited the jury's consideration of mitigating circumstances, and improperly guided the jury regarding its consideration of aggravating circumstances; (3) that the trial court erred in refusing to instruct the jury regarding lesser included offenses; (4) that trial counsel failed to provide effective assistance; (5) that appellate counsel rendered ineffective assistance; and (6) that the introduction of certain photographs into evidence violated his due process

rights. Because each of Stringer's points of error is either procedurally barred or without merit, we affirm the district court's denial of the writ.

## II. Prosecutorial Misconduct

■ Stringer contends that his sentence of death should be overturned because of several alleged instances of prosecutorial misconduct: (1) comments made during voir dire and closing argument; (2) photographs of the McWilliams introduced into evidence; and (3) comments made regarding Stringer's refusal to take a polygraph test. Both the district court and the Mississippi Supreme Court held that this claim was procedurally barred because no objections were raised either at trial or on direct appeal. *Stringer*, 675 F.Supp. at 365; *Stringer*, 485 So.2d at 275. We agree that these complaints are procedurally barred. Moreover, we see no merit there. For example, Stringer complains about a statement the prosecutor made during closing, but the trial court did all that it was requested to do by sustaining the defense counsel's objection. If the introduction of the photographs and comments about them and the polygraph test were improper under any law, there was clearly no prejudice to Stringer's substantial rights. *See Felde v. Blackburn*, 795 F.2d 400, 403 (5th Cir. 1986), *cert. denied,* — U.S. ——, 108 S.Ct. 210, 98 L.Ed.2d 161 (1987). As for the contention that the prosecutor misled the jury into believing that the decision on Stringer's sentence rested with appellate judges rather than with them, in violation of *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), Stringer points to two statements made during voir dire of prospective jurors: (1) that there are "nine Judges sitting up there on the Supreme Court that I've got to talk to"; and (2) that "[t]he Court has to make a decision and then ultimately other Courts may have to make a decision." Stringer has taken the prosecutor's comments out of context. The prosecutor was explaining to a juror that the law required that his questions be precise, not arguing that higher authorities substituted their discretion for that of the jury on the matter of punishment. The statements would not lessen the jury's sense of responsibility in considering the death sentence.

## III. Jury Instructions

Stringer asserts several points of error based on the trial court's instructions to the jury.

### A. *Life Option*

Stringer contends that the trial court not only omitted necessary language from the instructions, but also included language "which would have misled the jury about whether mercy could be extended to the appellant." Stringer failed to raise this point before the district court and we need not address it. *See Willie v. Maggio*, 737 F.2d 1372, 1387–88 n. 20 (5th Cir.), *cert. denied,* 469 U.S. 1002, 105 S.Ct. 415, 83 L.Ed.2d 342 (1984). Moreover, the trial court's charge may not be construed as Stringer argues.

■ The trial court instructed the jury that it could return a life sentence if it found no aggravating circumstances or if it failed to find beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating circumstances.[1] In order to impose the death penalty, the jury was instructed that it must find both that

1. The jury was instructed as follows:
   If you fail to find any aggravating circumstance(s) unanimously and beyond a reasonable doubt, or, if you find unanimously and beyond a reasonable doubt, one or more aggravating circumstance, but after weighing the aggravating and mitigating circumstance(s), one against the other, you fail to unanimously find, beyond a reasonable doubt, that the aggravating circumstance(s)

outweigh the mitigating circumstance(s), then your verdict shall be in the following form:
   "We the Jury, find the defendant should be sentenced to imprisonment for life in the state penitentiary."
   If, after reasonable deliberation, you cannot agree as to the punishment, you should certify your disagreement to the Court, and the Court shall, under the law, impose a sentence of imprisonment for life.

the aggravating circumstances outweighed the mitigating circumstances *and* that the death penalty should be imposed. Furthermore, the jury was told that the defendant would be sentenced to life imprisonment if they could not agree on punishment. These instructions did not make the death penalty mandatory. *See Edwards v. Scroggy*, 849 F.2d 204, 213 (5th Cir.1988) (citing *Edwards v. Thigpen*, 595 F.Supp. 1271, 1286 (S.D.Miss.1984)).

Stringer next complains that, as in *Mills v. Maryland*, —— U.S. ——, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), the trial court erred in instructing the jury that it must unanimously find mitigating circumstances before it might weigh them against aggravating circumstances. The result of such an instruction, Stringer alleges, is that the sentencing phase of the trial became subject to the possibility of a completely arbitrary decision to impose death because one juror could prevent all other jurors from considering a particular mitigating circumstance.

In *Mills*, the Supreme Court considered the propriety of a verdict form submitted to a jury in a Maryland state court and concluded that "there is a substantial probability that reasonable jurors, upon receiving the judge's instructions in this case, and in attempting to complete the verdict form as instructed, well may have thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance." *Mills*, 108 S.Ct. at 1870. In vacating the judgment which sustained the imposition of the death penalty,

the Court focused on the specific instructions given in that particular case.

■ Although the trial court undoubtedly added "unanimously" by oversight as the third word in the instructions quoted below,[2] a reading of the entire charge would not have led the jurors to think they were compelled to ignore mitigating circumstances (unless found unanimously) in determining an appropriate sentence for Stringer. The instructions given did not restrict the jury's right and power to consider the appropriateness of the death penalty even after it found that the aggravating circumstances outweighed the mitigating circumstances.

## B. *Mitigating Circumstances*

■ Stringer claims that the trial court's instructions improperly restricted the jury's consideration of mitigating circumstances in violation of *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). The trial court instructed the jury that it could consider as mitigating, among other things, "any and all other matters, facts or circumstances, or combination of circumstances surrounding the defendant's life, character or record or any circumstance(s) of the offense brought before you during the trial of this cause which you, the Jury, deem to be mitigating on behalf of the defendant or which reasonably mitigate against imposition of the death penalty." Under this instruction, Stringer's attorney was free to argue and the jury was free to consider whatever mitigating evidence was raised.

2. The jury was instructed, in pertinent part, as follows:

If you unanimously find from the evidence any one or more of the mitigating circumstance(s) listed above exists, and, if after weighing the mitigating circumstance(s) and the aggravating circumstance(s), one against the other, you further find unanimously from the evidence beyond a reasonable doubt that the aggravating circumstance(s) outweigh the mitigating circumstance(s) *and* the death penalty should be imposed, your verdict shall be written on a separate sheet of paper, shall be signed by your foreman, and shall be in the following form:

"We, the Jury, find unanimously and beyond a reasonable doubt the following aggravating circumstance(s); (list the aggravating circumstance(s), if any, which you unanimously find beyond a reasonable doubt from those listed above in the same language as they are listed.) We, the Jury, further find unanimously from the evidence and beyond a reasonable doubt that after weighing the mitigating circumstance(s) and the aggravating circumstance(s), one against the other, that the aggravating circumstance(s) do outweigh the mitigating circumstance(s) *and* that the defendant should suffer the penalty of death." (emphasis added)

## C. *Aggravating Circumstances*

Relying on *Maynard v. Cartwright,* —— U.S. ——, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), Stringer asserts that his death sentence should be set aside since the trial court failed to define the unconstitutionally overbroad "especially heinous, atrocious, and cruel" aggravating circumstance. The State maintains that our decision in *Edwards v. Scroggy,* 849 F.2d 204 (5th Cir. 1988), forecloses Stringer's argument. In *Edwards,* the defendant-appellant argued that there was insufficient evidence to support one of the aggravating circumstances found by the jury and that, therefore, his death sentence should be vacated. This court, assuming for the sake of argument that the aggravating circumstance complained of was invalid, determined that the death sentence should stand. In so holding, the court distinguished the case before it from that presented in *Maynard:*

> [*Maynard*] was remanded to the Oklahoma court to determine as a matter of state law whether the sentence should be set aside. Unlike Oklahoma law, however, Mississippi law is clear that one invalid aggravating circumstance will not suffice to overturn a death penalty where other valid aggravating circumstances remain.

*Edwards,* 849 F.2d at 211 n. 7 (citations omitted). Actually, the Supreme Court affirmed the Tenth Circuit's judgment which vacated the death sentence and remanded the cause to the state court for such further proceedings as it might wish to conduct.

The facts in *Maynard* are, however, distinguishable from those presented in *Edwards* and those presented here. In *Maynard,* the State advanced the argument that the death sentence should be upheld because there was a valid aggravating circumstance remaining. In rejecting this argument, the Supreme Court noted that at the time that Cartwright's case was decided, the Oklahoma Court of Criminal Appeals itself would not attempt to save a death penalty when one of the aggravating circumstances was found invalid, but instead would automatically impose a sentence of life imprisonment. Noting that, since Cartwrights' conviction, the Oklahoma Court of Criminal Appeals had determined that it would not necessarily set aside a death penalty where on appeal one of several aggravating circumstances was found invalid, the Court wrote that "[w]hat significance these decisions of the Court of Criminal Appeals have for the present case is a matter for the state courts to decide in the first instance." *Maynard,* 108 S.Ct. at 1860. By contrast, the Mississippi Supreme Court has held that a death sentence should be upheld even though an aggravating circumstance is found invalid or unsupported by the evidence, so long as at least one aggravating circumstance remains. *See, e.g., Lanier v. State,* 533 So.2d 473 (Miss. 1988) (en banc); *Johnson v. State,* 511 So.2d 1333, 1337 (Miss.1987), *rev'd on other grounds,* —— U.S. ——, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988); *Irving v. State,* 498 So.2d 305, 314 (Miss.1986), *cert. denied,* 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 826 (1987); *Edwards v. State,* 441 So.2d 84, 92 (Miss.1983).

■ There is another reason that *Maynard* does not control the disposition of this case. In *Maynard,* the Supreme Court did not directly address the specific issue confronting us here: Must a death sentence be vacated when one of the three statutory aggravating circumstances found by the jury is subsequently held to be invalid and the jury was instructed to weigh the statutory aggravating circumstances against all mitigating circumstances in determining an appropriate sentence? For the reasons given below, we conclude that it must not.

The Supreme Court, in *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), addressed a similar issue involving Georgia's capital sentencing scheme. In *Zant,* a jury found the defendant guilty of murder. The court then instructed the jury at the sentencing phase of the trial that it must find one or more statutory aggravating circumstances in order to fix punishment at death, but that in determining the appropriate sentence, "the jury was authorized to consider all of the evidence

received during the trial as well as all facts and circumstances presented in extenuation, mitigation, or aggravation during the sentencing proceeding." *Zant*, 103 S.Ct. at 2737. The jury found three aggravating circumstances beyond a reasonable doubt and sentenced Stephens to death. The Georgia Supreme Court later held one of the statutory aggravating circumstances invalid on the ground that it was unconstitutionally vague, yet determined that the other two aggravating circumstances adequately supported the death sentence. *Id.* at 2738.

The United States Supreme Court ultimately upheld this decision, rejecting the defendant's contention that Georgia's statutory scheme was invalid under the holding in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). In so doing, the Court emphasized two important features of Georgia's scheme which it determined adequately channelled the factfinder's discretion in imposing a sentence: first, that the jury was required to find at least one valid statutory aggravating circumstance and to identify it in writing, and second, that the state supreme court reviewed the record of every death penalty proceeding to determine whether the sentence was arbitrary or disproportionate. *Zant*, 103 S.Ct. at 2742. The Court summarized its cases concerning the treatment of statutory aggravating circumstances:

> Our cases indicate, then, that statutory aggravating circumstances play a constitutionally necessary function at the stage of legislative definition: they circumscribe the class of persons eligible for the death penalty. But the Constitution does not require the jury to ignore other possible aggravating factors in the process of selecting, from among that class, those defendants who will actually be sentenced to death. What is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime.

*Zant*, 103 S.Ct. at 2743–44 (citations and footnote omitted).

The Mississippi capital sentencing scheme, though similar in many respects to Georgia's scheme, differs in one material aspect. Like Georgia, Mississippi requires the jury to find at least one statutory aggravating circumstance beyond a reasonable doubt in order to consider imposing the death penalty. Like Georgia, Mississippi requires the state supreme court to review each death penalty for arbitrariness and proportionality. Unlike Georgia, however, Mississippi requires that the jury weigh statutory aggravating circumstances against all mitigating circumstances as part of its process in deciding an appropriate sentence. Therefore, in Mississippi, unlike in Georgia, the finding of a statutory aggravating circumstance plays some role in guiding the sentencing body in the exercise of its discretion in addition to its function of narrowing the class of defendants convicted of murder who are eligible for the death penalty. Even if the jury determines that the statutory aggravating circumstances outweigh the mitigating circumstances, however, the jury is always entitled to return a sentence of life imprisonment.

We believe that the Mississippi capital punishment scheme, as applied in this case, passes constitutional muster for virtually the same reasons articulated by the Supreme Court in *Zant*. The jury in this case, like the jury in *Zant*, found the existence of three statutory aggravating circumstances and identified them in writing. On appeal, the Mississippi Supreme Court found that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor, that the evidence was sufficient to support the jury's findings on each statutory aggravating circumstance, and that the sentence of death was not excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant. *Stringer*, 454 So.2d at 478–79.

The Supreme Court, in *Maynard*, determined that the "especially heinous, atrocious, or cruel" aggravating circumstance, when submitted for the jury's consideration without a limiting instruction, is unconstitutionally overbroad. The facts of this

case do not, however, require that Stringer's death sentence be vacated. The jury found that two other aggravating circumstances existed as well. This satisfies any constitutional concerns and adequately channels the jury's discretion. When the jury's discretion in sentencing is narrowed by its finding of appropriate aggravating factors, there should be no constitutional objection to the jury considering the heinousness of the crime—even though heinousness, as defined or even under the facts, would not alone have narrowed the jury's discretion so as to satisfy Eighth Amendment requirements. Contrast the case of *Johnson v. Mississippi,* — U.S. ——, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988), where evidence supporting the invalidated aggravating circumstance was inadmissible and prejudicial.

That the jury was instructed to weigh statutory aggravating circumstances against mitigating circumstances does not alter the federal decision. We see no difference, other than one in semantics, between instructing a jury to weigh aggravating against mitigating circumstances in determining the sentence and instructing a jury to consider all aggravating and mitigating circumstances in deciding on the sentence. Had this jury been instructed as the jury was in *Zant,* it would have been constitutionally authorized to consider as aggravating all the facts and circumstances surrounding the crime—for instance, whether it believed the crime to be heinous, atrocious, or cruel—and to use those considerations in arriving at a sentencing decision. That it was not so instructed, that is, that the court limited its consideration to only statutory aggravating circumstances, is a matter of state law only. *Zant,* 103 S.Ct. at 2743 n. 17. We look to Mississippi to decide the impact of the invalid aggravating circumstance on Stringer's death sentence. Mississippi has held that the invalidation of an aggravating circumstance will not affect the death sentence so long as there is at least one valid aggravating circumstance remaining. Here, two valid aggravating circumstances remained. We overrule Stringer's argument.

D. *Lesser Included Offense*

■ Stringer next complains that the trial court erred in failing to instruct the jury on a lesser included offense of non-capital murder or manslaughter. This is a new complaint, but it has no merit. Stringer introduced no evidence on which the jury rationally could have found him guilty of a lesser offense and acquitted him of the greater offense. *See Beck v. Alabama,* 447 U.S. 625, 635, 100 S.Ct. 2382, 2388, 65 L.Ed.2d 392 (1980) (quoting *Keeble v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973)). Under the evidence presented at trial, either Stringer led a gang of robbers with the intent to murder the two victims, or he was at home nursing a back pain.

IV. Assistance of Trial Counsel

A. *Failure to Present Mitigating Evidence*

Stringer asserts that his right to the effective assistance of counsel at trial was violated in that his trial counsel neither prepared nor presented a case in mitigation at the sentencing phase of the trial. The district court held an evidentiary hearing limited to the issues of the effectiveness of trial and appellate counsel and found that Stringer did receive effective assistance. Stringer's trial attorneys, Sam Wilkins and James Nelson, and Stringer's appellate counsel, Harry Kelly, testified at the hearing.

■ The United States Supreme Court articulated the standard by which we evaluate the effectiveness of counsel in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order for a convicted defendant's ineffective assistance claim to prevail, he must show both that counsel's performance was deficient and that the deficiency actually prejudiced his defense, thereby making the result of the trial unreliable. *Id.* at 687, 104 S.Ct. at 2064. Because it is all too easy for a reviewing court to conclude that a particular defense was unreasonable once that defense has proved unsuccessful, we give great deference to counsel's performance

and evaluate its reasonableness in light of the facts and circumstances as they appeared to exist at the time of trial. *Id.* at 689, 104 S.Ct. at 2065. Applying this standard to the facts before us, we conclude that Stringer received effective assistance at trial.

At the district court's hearing, Wilkins testified that he had spent the majority of his time preparing for the guilt phase of the trial and that he was "devastated" when the jury returned a guilty verdict. He testified further that he could not recall the details of what occurred between the announcement of the guilty verdict and the sentencing phase of the trial or how the decision was reached not to present mitigating evidence. Wilkins did state, however, that he had not formally investigated possible mitigating evidence since he already had personal knowledge of Stringer's background and friends.

Nelson, Wilkins' associate, testified that he and Wilkins conferred with Stringer following the conclusion of the trial's guilt phase, at which time they explained the purpose of the mitigation case and discussed which family members could testify. According to Nelson, Stringer told them in no uncertain terms that he did not want his family to testify in his behalf. Stringer did not testify at the hearing. It is now argued that even if Stringer forbade the use of family members as witnesses, he did not prohibit the use of other witnesses or other evidence.

▆▆▆ The failure to present a case in mitigation during the sentencing phase of a capital murder trial is not, per se, ineffective assistance of counsel. This court has often upheld decisions not to put on mitigating evidence where the decision resulted from a strategic choice. *See, e.g., Moore v. Maggio,* 740 F.2d 308, 315–16 (5th Cir. 1984), *cert. denied,* 472 U.S. 1032, 105 S.Ct. 3514, 87 L.Ed.2d 643 (1985); *Lowenfield v. Phelps,* 817 F.2d 285, 291 (5th Cir.1987), *aff'd,* — U.S. —, 108 S.Ct. 546, 98 L.Ed. 2d 568 (1988).

▆▆▆ Stringer contends, however, that Wilkins made no strategic choice in this case and cites as proof Wilkins' statement

at the habeas proceeding that he had no reason based on sound trial strategy for not preparing and presenting certain witnesses for the sentencing decision. We disagree. In concluding that Stringer received effective assistance at trial, the district court apparently discredited much of Wilkins' testimony, which it was entitled to do. Furthermore, the district court had good reason to see Wilkins' decision not to present additional mitigating evidence as understandable strategy. We agree with the district court for the reasons originally given by the Mississippi Supreme Court upon the direct appeal. 454 So.2d at 475–78.

The jury, in returning a guilty verdict, showed what they thought of Stringer's alibi. They had found him guilty of a deliberate massacre of innocent human beings. The testimony of someone who had known and liked Stringer years ago was not going to lessen the impact of that evidence. Stringer's only hope was to get at least one juror to have enough misgiving regarding his guilt to block the death penalty. Wilkins attempted to do just that by arguing that he and his client had to accept the verdict of guilty but that any qualms a juror might have regarding Stringer's guilt should be resolved against imposing the death penalty. On the record before us, we are in no position to say that this was not the best that could be done for Stringer.

▆▆▆ Furthermore, Stringer has been unable to establish that he was prejudiced by trial counsel's performance. Stringer asserts that Wilkins should have presented evidence of his war record, his medical record, and his reputation as a businessman and family man in mitigation. Based on the State's evidence presented during the guilt phase, which the jury obviously believed, we cannot conclude that there is a reasonable probability that, but for Wilkins' failure to present this evidence, the result of the proceeding would have been different. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

## B. *Conflict of Interest*

Stringer also asserts that his trial counsel was ineffective because he had a conflict of interest. Stringer bases his claim on the fact that Wilkins represented two other codefendants in addition to Stringer.

"'Requiring or permitting a single attorney to represent codefendants ... is not *per se* violative of constitutional guarantees of effective assistance of counsel.'" *Burger v. Kemp,* 483 U.S. 776, 107 S.Ct. 3114, 3120, 97 L.Ed.2d 638 (1987) (quoting *Holloway v. Arkansas,* 435 U.S. 475, 482, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978)). In order to prevail on such a claim, having made no objection at trial, Stringer must demonstrate that an actual conflict existed by pointing to specific instances in the record which reflect that Wilkins' performance in his behalf was adversely affected. *See Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980); *United States v. Fox,* 613 F.2d 99, 102 (5th Cir.1980). Speculative or merely hypothetical conflicts do not implicate the Sixth Amendment right to the effective assistance of counsel. *Baty v. Balkcom,* 661 F.2d 391, 395 (5th Cir. Unit B Nov. 1981), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982); *Foxworth v. Wainwright,* 516 F.2d 1072, 1077 n. 7 (5th Cir.1975). The petitioner must specifically identify instances in the record that reflect that his counsel "'made a choice between possible alternative courses of action such as eliciting (or failing to elicit) evidence, helpful to one client but harmful to the other.'" *United States v. Mers,* 701 F.2d 1321, 1328 (11th Cir.) (quoting Comment, *Conflict of Interests in Multiple Representation of Criminal Co–Defendants,* 68 J.Crim.L. & Criminology 226, 232 (1977)), *cert. denied,* 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983). Stringer has not made that showing here.

Stringer contends that Wilkins' representation of both himself and his son and codefendant, Jimbo Stringer, was an obvious actual conflict of interest because, under the State's theory, Jimbo was targeted as a triggerman while Stringer was not. These facts alone do not establish an actual conflict of interest. Stringer's defense was alibi, and all three of Wilkins' clients told the same story. At the time that Wilkins undertook the representation of the codefendants, he told them that if they all were telling the truth he would have no conflict of interest, but that if they had in fact committed the charged crime then he would have a conflict of interest. All three stood by their stories, as did the other alibi witnesses who spoke with Wilkins. Stringer did not contradict Wilkins' testimony regarding this discussion at the hearing, and the district court accepted Wilkins' testimony as true.

Stringer next alleges that an actual conflict is evident based on the prosecution's reference in closing argument to five of the six defense witnesses as "Sam's Army." Each of those five witnesses had testified that Sam Wilkins represented him or her. The prosecution, in an attempt to discredit the witnesses, stated during argument that one of the many unanswered questions in the case was why all of these witnesses chose Sam Wilkins as their lawyer. Stringer argues that Wilkins' readiness to represent so many people involved in the case that the prosecutor could get away with referring to the defense witnesses collectively as "Sam's Army" worked to his detriment in that Wilkins never discussed other possible defenses that might be raised in Stringer's behalf. But that suggests no conflict; no other defenses were discussed for the simple reason that this defense, assuming its truth, was the only defense for all of his clients.

Stringer also claims that Wilkins' performance reflected a conflict of interest at the trial's sentencing phase. He asserts that Wilkins should have argued to the jury that even under the State's theory of the case, he was not the triggerman who actually killed Nell McWilliams. To make such an argument would have shown Stringer's willingness to lay the blame for the murder on his own son in order to save himself. Wilkins testified that "even in retrospect" he would not have made this argument. Not only would it have undermined any doubt the jurors had regarding Stringer's

guilt, but also it would have sent the wrong message to the jury regarding Stringer's character and family commitment. Stringer has failed to demonstrate an actual conflict.

## V. Assistance of Appellate Counsel

Stringer next contends that he was denied effective assistance of counsel on appeal due to his appellate attorney's alleged conflict of interest. Harry Kelly took over representation of both Stringer and his son, Jimbo, following Stringer's conviction for murder. Stringer primarily urges in regard to this claim that Kelly rendered ineffective assistance of counsel because he failed to raise two issues in Stringer's appeal that he did raise in Jimbo's case. Those two issues were (1) the use of graphic photographs of the McWilliams and (2) the use of a facsimile riot gun.

Kelly testified at the hearing below that in conducting Stringer's appeal he had chosen to concentrate only on what he considered to be the strongest arguments for Stringer. The Supreme Court stated in *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983)), that the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Stringer asserts, however, that Kelly did not, in fact, winnow out only the weaker arguments from Stringer's appeal. To support his contention, Stringer points to the two issues excluded from Stringer's appeal that were included in Jimbo's appeal and the additional points Kelly raised in the brief supporting Stringer's motion for rehearing filed with the Mississippi Supreme Court.

That Kelly could have raised additional points on appeal and that he did raise additional points in a motion for rehearing do not indicate that he did not "winnow out" the weaker arguments from Stringer's appeal. When Kelly came into the case Stringer had been tried and the record had been made. Kelly could do no more than present those arguments that he believed worked most strongly in Stringer's favor.

Further, as the State points out and as the record reflects, Stringer did not have available to him the same arguments Kelly raised in Jimbo's behalf regarding the photographs and the riot gun. In Jimbo's trial for the murder of Ray McWilliams, the prosecutor displayed slides of Nell McWilliams to the jury during his closing argument. Later, on appeal, the Mississippi Supreme Court held that the introduction of the photographs into evidence was not reversible error, but that the display of the photographs during closing argument, when combined with other prosecutorial tactics, so prejudiced the jury that Jimbo could not have received a fair sentencing trial. *See Stringer v. State*, 500 So.2d 928, 934–35 (Miss.1986). One such tactic referred to was the prosecutor's argument that this was the jury's last chance to give Jimbo the death penalty since he had received a life sentence for Nell McWilliams' murder. This argument was not made in Stringer's trial.

Similarly, Kelly could not have made the same argument for Stringer with regard to the "facsimile riot gun"; that gun was never introduced at Stringer's trial. The State did introduce the .38 caliber pistol found in Stringer's boot when he was arrested. Kelly raised that point and the Mississippi Supreme Court addressed it on Stringer's direct appeal. *Stringer*, 454 So. 2d at 475.

Stringer has not shown that an actual conflict of interest existed due to Kelly's representation of both Stringer and Jimbo. After a full evidentiary hearing, the district court concluded that Stringer had "been unable to present facts, and not mere inferences, to show that Kelly had an actual conflict of interest which rendered him ineffective." *Stringer*, 675 F.Supp. at 364. We agree.

## VI. Photographs

Finally, Stringer asserts for the first time on appeal that the admission of

certain photographs of the murder scene violated his due process rights. Stringer did not present this claim to the district court and therefore we need not consider it on appeal. *See Willie*, 737 F.2d at 1387–88 n. 20. Furthermore, the evidence clearly does not offend constitutional due process.

The stay of sentence is vacated. The judgment of the district court denying the writ is AFFIRMED.

JOHNSON, Circuit Judge, dissenting.

It cannot be stated often enough that "death is qualitatively different from other punishments that can be imposed by the state." *Cartwright v. Maynard*, 822 F.2d 1477, 1483 (10th Cir.1987) (en banc), *aff'd*, —— U.S. ——, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). Because of the finality attendant with the punishment of death, it is critical that the process by which a criminal defendant is sentenced to death not be one tainted by error which could result in the imposition of the death sentence in a manner inconsistent with constitutional guarantees. In the instant case, an error of constitutional magnitude flawed the decision of the jury to sentence defendant James Stringer to death. Specifically, the jury was permitted to consider an unconstitutionally vague statutory aggravating circumstance during its sentencing deliberations, deliberations which involved the balancing of statutory aggravating and mitigating circumstances. Further, the improper consideration by the jury of the invalid aggravating circumstance was not cured on appeal by the Mississippi Supreme Court. Moreover, the unconstitutionally vague aggravating circumstance was vigorously argued to the jury by the prosecutor as a justification for imposing the death sentence on Stringer. Today, a majority of this panel concludes that the above error does not necessitate a resentencing of Stringer. Persuaded that the eighth and fourteenth amendments to the Constitution demand the reversal of Stringer's death sentence which was imposed pursuant to a sentencing determination that included the consideration by the jury of an unconstitutional statutory aggravating circumstance in the balancing of aggravating and mitigating factors, I respectfully dissent.

Pursuant to the Mississippi death penalty scheme, defendants eligible for conviction for capital murder are limited to defendants committing murders in eight situations: murder of a peace officer or fireman; murder committed while under sentence of life imprisonment; murder committed by use of an explosive device; murder committed for remuneration; killing committed in the course of burglary, robbery, kidnapping, arson, rape, and other sexual offenses; killing committed in the course of felonious abuse of a child; and murder of an elected official. Miss.Code Ann. § 97–3–19(2) (Supp.1987). By limiting the types of murders which may be classified as capital murders in such a fashion, Mississippi narrows the class of defendants eligible to receive the death penalty. Following the conviction of a defendant for capital murder in Mississippi, the jury is next required to determine whether any statutory aggravating circumstances exist to justify the imposition of the death penalty. To impose the death penalty on a defendant, the jury must find at least one aggravating circumstance. Miss. Code Ann. § 99–19–103 (Supp.1987); *Johnson v. Thigpen*, 806 F.2d 1243, 1247 (5th Cir. 1986), *cert. denied*, 480 U.S. 951, 107 S.Ct. 1618, 94 L.Ed.2d 802 (1987). After finding that at least one statutory aggravating circumstance exists, the jury is then required to weigh the statutory aggravating circumstances found against any mitigating circumstances found in deciding the appropriate punishment. Miss.Code Ann. § 99–19–103.

Pursuant to this process, the jury in the instant case found three statutory aggravating circumstances and, pursuant to the balancing analysis described above, sentenced Stringer to death. Specifically, the jury found the following three statutory aggravating circumstances in Stringer's case: (1) that the murder was intentional and committed while engaged in an attempt to commit robbery for pecuniary gain; (2) that the murder was committed for the purpose of avoiding or preventing detection and lawful arrest; and (3) that

the murder was especially heinous, atrocious, or cruel. On appeal, Stringer challenges the constitutionality of the "especially heinous" aggravating circumstance, asserting that the aggravating circumstance is unconstitutionally vague.

Last term, the Supreme Court addressed the constitutionality of the especially heinous aggravating circumstance as applied under Oklahoma law in *Maynard v. Cartwright*, —— U.S. ——, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), explaining the concept of vagueness in the context of capital punishment in the following manner:

> Claims of vagueness directed at aggravating circumstances defined in capital punishment statutes are analyzed under the Eighth Amendment and characteristically assert that the challenged provision fails adequately to inform juries what they must find to impose the death penalty and as a result leaves them and appellate courts with the kind of open-ended discretion which was held invalid in *Furman v. Georgia*, 408 U.S. 238 [92 S.Ct. 2726, 33 L.Ed.2d 346] (1972).

108 S.Ct. at 1858.

In *Maynard*, as will be discussed in greater detail subsequently, the Supreme Court held that the especially heinous aggravating circumstance as applied by the Oklahoma courts was unconstitutionally vague. *Id.* at 1859. In the instant appeal Stringer relies on the *Maynard* decision in seeking a reversal of his death sentence. The majority today nevertheless concludes that Stringer's claim in this regard is foreclosed by the recent decision of this Court in *Edwards v. Scroggy*, 849 F.2d 204 (5th Cir.1988), *petition for cert. filed*, —— U.S. L.W. —— (U.S. Oct. 18, 1988).

In *Edwards*, a Mississippi capital murder case, the defendant Edwards was sentenced to death after the jury found six statutory aggravating circumstances. The *Edwards* Court, in rejecting a claim that the invalidation of one of the six statutory aggravating circumstances necessitated a resentencing of Edwards, relied on the holding by the Supreme Court in *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), that "the invalidation of

one aggravating circumstance [does] not require the vacation of the death penalty so long as there [are] other valid aggravating circumstances remaining." *Edwards*, 849 F.2d at 211. The *Edwards* Court, addressing the impact of the recent decision of the Supreme Court in *Maynard*, then reasoned that the *Maynard* decision was distinguishible for the reason that the Oklahoma law reviewed in *Maynard* was unclear regarding the effect of the invalidation of one aggravating circumstance on the validity of a death sentence. The *Edwards* Court thereafter, in contrast, stated "Mississippi law is clear that one invalid aggravating circumstance will not suffice to overturn a death penalty where other valid aggravating circumstances remain." *Edwards*, 849 F.2d at 211 n. 7 (citation omitted). Thus, relying on the above distinction of the *Maynard* decision, the *Edwards* Court refused to vacate Edwards' death sentence.

The *Edwards* opinion, as stated by the majority, now constitutes Circuit precedent; nevertheless, I feel compelled to address what I perceive to be an important issue left unaddressed by this Court in *Edwards* and one which was purposefully reserved by the Supreme Court in *Zant*—that issue being the effect on the validity of a death sentence of a holding that "a particular aggravating circumstance is 'invalid' under a statutory scheme in which the judge or jury is specifically instructed to weigh statutory aggravating and mitigating circumstances in exercising its discretion whether to impose the death penalty." *Zant*, 462 U.S. at 890, 103 S.Ct. at 2749.

In *Zant v. Stephens*, the Supreme Court concluded that the validity of a death sentence based in part on the consideration by the jury of an invalid aggravating circumstance "depends on the function of the jury's finding of an aggravating circumstance under [a state's] capital sentencing statute, and on the reasons that the aggravating circumstance at issue ... was found to be invalid." *Id.* at 864, 103 S.Ct. at 2736. *See also Cartwright v. Maynard*, 822 F.2d 1477. In *Zant*, the Supreme Court addressed the validity of a death sentence

imposed pursuant to Georgia law under circumstances where the jury, in sentencing the defendant Stephens to death, was permitted to consider a statutory aggravating circumstance subsequently declared invalid by the Georgia Supreme Court. In its analysis of *Zant*, the Supreme Court initially noted that the function of a jury's finding of an aggravating circumstance under the Georgia capital sentencing scheme is to narrow the class of individuals eligible to receive the death penalty. In this regard, as long as one aggravating circumstance is found by the jury, the threshold dividing murderers in Georgia that are eligible for the death penalty and those murderers that are not so eligible, is crossed. *Zant*, 462 U.S. at 870–72, 103 S.Ct. at 2739–40. Significantly, the *Zant* Court noted that a function which an aggravating circumstance does *not* serve under the Georgia statute is that of guiding the discretion of the sentencer in deciding whether to impose life imprisonment or death. *Id.* at 874, 103 S.Ct. at 2741. Georgia, unlike other states, does not instruct its juries "to give any special weight to any aggravating circumstance, to consider multiple aggravating circumstances any more significant than a single such circumstance, or to balance aggravating against mitigating circumstances pursuant to any special standard." *Id.* at 873–74, 103 S.Ct. at 2740–41.

After noting the function, as described above, of an aggravating circumstance under the Georgia capital scheme, the Supreme Court in *Zant* concluded that the existence of two valid aggravating circumstances served the constitutional requirement of narrowing the class of persons eligible for the death penalty despite the consideration by the jury of a third aggravating circumstance—that the defendant had "a substantial history of serious assaultive criminal convictions"—which had been declared unconstitutionally vague. *Id.* at 879, 103 S.Ct. at 2744. Thus, concluding that the defendant Stephens had already crossed the threshold into the class of individuals eligible for the death penalty by virtue of the two valid statutory aggravating circumstances found by the jury, the Supreme Court determined that the jury's

consideration of the invalid statutory aggravating circumstance in deciding whether to actually impose the death penalty did not amount to constitutional error. The Supreme Court stated that "the Constitution does not require the jury to ignore other possible aggravating factors in the process of selecting, from among that class, those defendants who will actually be sentenced to death." *Id.* at 878, 103 S.Ct. at 2743. Thus, despite recognizing the possibility that the labelling of the invalid aggravating circumstance as statutory in Stephens' case might have caused the jury to afford that circumstance greater weight in its sentencing deliberations, the Supreme Court determined the death sentence to be constitutionally valid. *Id.* at 888–89, 103 S.Ct. at 2748–49.

At this point, some observations regarding the *Zant* decision which are important to the instant appeal by Stringer must be made. First, the Supreme Court, in upholding Stephens' death sentence, relied in part on the meaningful appellate review conducted by the Georgia Supreme Court in capital cases to insure that the death penalty is not imposed in a disproportionate, arbitrary, or capricious fashion. *Id.* at 890, 103 S.Ct. at 2749. Additionally, and of considerable import, is the fact that the Supreme Court in *Zant* established that the function of an aggravating circumstance in a capital scheme is critical to the validity of a death sentence imposed pursuant to the consideration by the sentencer of an invalid aggravating circumstance. In this regard, the Supreme Court in the final paragraph of its opinion in *Zant*, purposefully declined to intimate an opinion as to the following issue:

> Finally, we note that in deciding this case we do not express any opinion concerning the possible significance of a holding that a particular aggravating circumstance is 'invalid' under a statutory scheme in which the judge or jury is specifically instructed to weigh statutory aggravating and mitigating circumstances in exercising its discretion whether to impose the death penalty.

*Id.* at 890, 103 S.Ct. at 2750.

Recently, in the Tenth Circuit's en banc treatment of *Cartwright v. Maynard*, that

court confronted the above question reserved by the Supreme Court in *Zant* regarding the effect of an invalid aggravating circumstance on the validity of a death sentence imposed pursuant to a capital sentencing scheme under which a jury is required to balance statutory aggravating and mitigating circumstances in exercising its discretion to impose the death penalty. *Maynard,* 822 F.2d 1477. In the Tenth Circuit's en banc *Maynard* opinion, a case in which the court was reviewing the validity of a death sentence imposed under Oklahoma law, the Tenth Circuit engaged in an extensive discussion of the Supreme Court's pronouncements addressing the effect of a jury's consideration of an invalid aggravating circumstance on the validity of a death sentence. The Tenth Circuit *Maynard* court observed that the Supreme Court decisions in this area "leave open the question of whether a sentencing authority that must weigh all statutory factors [aggravating and mitigating] may consider constitutionally invalid aggravating circumstances." *Maynard,* 822 F.2d at 1482 (quoting Special Project, *Capital Punishment in 1984: Abandoning the Pursuit of Fairness and Consistency,* 69 Cornell L. Rev. 1629, 1681 (1984)). In resolving the above question in *Maynard,* the Tenth Circuit applied the language of the Supreme Court in *Zant* regarding the function of an aggravating circumstance under a capital scheme and the reason a particular aggravating circumstance is invalid.

On the function of an aggravating circumstance under Oklahoma law, the en banc *Maynard* court stated that "[t]he purpose of an aggravating circumstance in the Oklahoma statute is decidedly different from the purpose of an aggravating circumstance in the Georgia statute considered in *Zant.*" *Id.* at 1480. Pursuant to Oklahoma law, any first degree murder is eligible to be classified as a capital murder and thus, the purpose of an aggravating circumstance under the Oklahoma capital sentencing scheme is not to narrow the class of persons eligible to receive the death penalty. Instead, "Oklahoma uses an aggravating circumstance to guide the discretion of the sentencer in determining

whether the death penalty should be imposed for a particular murder." *Id.* at 1480; Okla.Stat.Ann. Title 21, § 701.10 (West 1983). Following the conviction of a defendant for first degree murder in Oklahoma, a jury is required to balance all of the statutory aggravating circumstances found against all of the mitigating circumstances found in determining whether or not to impose the death penalty. Okla. Stat.Ann. Title 21, § 701.11 (West 1983). As a result, the effect of the consideration by the jury of an invalid aggravating circumstance under Oklahoma's capital sentencing scheme, as compared to the Georgia scheme, is a greater likelihood that the death penalty will be imposed in an arbitrary and capricious manner as "[a]n aggravating circumstance in Oklahoma plays a critical role in guiding the discretion of the sentencer who must decide whether a particular murder merits life imprisonment or death for the defendant." *Maynard,* 822 F.2d at 1482.

In addressing the second aspect of the Supreme Court's analysis in *Zant* regarding the reason a particular aggravating circumstance is invalid, the en banc *Maynard* court noted that the Supreme Court has previously upheld death sentences where an invalid aggravating circumstance was considered by the jury and that aggravating circumstance was invalid only under state, not federal, law. *See Wainwright v. Goode,* 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed. 2d 187 (1983); *Barclay v. Florida,* 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983). Particularly relevant to the instant appeal by Stringer is the ruling by the Supreme Court in *Wainwright v. Goode,* wherein the Supreme Court emphasized the curative effect of the appellate review conducted by the Florida Supreme Court of the death sentence imposed in that case. In *Goode,* the Florida Supreme Court independently rebalanced only the valid aggravating circumstances found by the jury against the mitigating circumstances to determine if the death sentence was valid. In upholding the death sentence imposed in *Goode,* the Supreme Court stated that "there is no claim that in conducting its

independent reweighing of the aggravating and mitigating circumstances the Florida Supreme Court considered [an invalid aggravating circumstance]." *Goode*, 464 U.S. at 86–87, 104 S.Ct. at 383–84.

In *Maynard*, the Tenth Circuit distinguished the defendant Cartwright's case from that of the invalid aggravating circumstances at issue in *Barclay* and *Goode* on the basis that the invalid aggravating circumstance in Cartwright's case—the identical "heinous, atrocious, or cruel" circumstance at issue in the instant appeal by Stringer—was invalid not under state law, but under federal constitutional law. *Maynard*, 822 F.2d at 1480. Further, the Tenth Circuit in *Maynard* noted that Oklahoma courts do not provide for a method of appellate review whereby the Oklahoma appellate courts may independently reweigh only the valid aggravating and mitigating circumstances in a capital case so as to cure on appeal a sentencer's consideration of an invalid aggravating circumstance. *Id.*

On the basis of the above observations regarding the function of an aggravating circumstance in Oklahoma and the reason the especially heinous aggravating circumstance was invalid, the Tenth Circuit ultimately concluded that:

> [R]eliance upon an aggravating circumstance that is invalid under the federal constitution could affect the balance struck by the sentencer. The improper reliance is not corrected by the state appellate review process and is not a matter of state law beyond the review of a federal court in a habeas corpus proceeding. A death sentence that is imposed pursuant to a balancing that included consideration of an unconstitutional aggravating circumstance must be vacated under the Eighth and Fourteenth Amendments. We therefore must consider Cartwright's allegation that Oklahoma's application of the 'especially heinous, atrocious, or cruel' aggravating circumstance in this case was unconstitutionally vague.

*Id.* at 1482–83. After reaching the above conclusion, the Tenth Circuit then proceed-

ed to hold that the especially heinous aggravating circumstance as applied pursuant to Oklahoma law was in fact unconstitutionally vague under the Federal Constitution. *Id.* at 1483–91. The Tenth Circuit reasoned that it was therefore presented with the question of whether or not the court could sua sponte apply a limiting construction of the especially heinous aggravating circumstance to the facts of Cartwright's case so as to cure any error by the jury in considering the unconstitutional aggravating circumstance. Observing that Oklahoma had adopted no such limiting construction, the Tenth Circuit determined that the fashioning of such a saving construction must be made by the State in the first instance and accordingly, remanded Cartwright's case to the state courts for a redetermination of his sentence. *Id.* at 1492.

Thereafter, the Supreme Court, reviewing the en banc decision of the Tenth Circuit in *Maynard*, affirmed the holding by the Tenth Circuit that the language of the especially heinous aggravating circumstance was unconstitutionally vague under the eighth and fourteenth amendments. *Maynard*, —— U.S. ——, 108 S.Ct. at 1859. However, the Supreme Court did not comment on the further conclusion by the Tenth Circuit that a death sentence imposed pursuant to a balancing that included consideration of an unconstitutional aggravating circumstance must be vacated under the eighth and fourteenth amendments. Instead, the Supreme Court in *Maynard*, recognizing, as did the Tenth Circuit, that Oklahoma had no provision for curing the consideration of an invalid aggravating circumstance on appeal, remanded Cartwright's case to the Oklahoma state courts for a redetermination of the appropriate sentence. In this regard, the Supreme Court stated that:

> It is true that since the decision of the Court of Appeals, the Oklahoma Court of Criminal Appeals has restricted the heinous, atrocious, or cruel aggravating circumstance to those murders in which torture or serious physical abuse is present. At the same time, that court decided that it would not necessarily set aside a death

penalty where on appeal one of several aggravating circumstances has been found invalid or unsupported by the evidence.

What significance these decisions of the Court of Criminal Appeals have for the present cases is a matter for the state courts to decide in the first instance.

*Maynard,* —— U.S. ——, 108 S.Ct. at 1860 (citations omitted).

Turning to the facts of the case sub judice, it is observed that the function of an aggravating circumstance under the Mississippi capital sentencing scheme constitutes a hybrid between that of the function of the aggravating circumstance under the Georgia capital scheme reviewed in *Zant* and the aggravating circumstance under the Oklahoma capital scheme reviewed in *Maynard.* Under the Mississippi scheme, a statutory aggravating circumstance serves not only to narrow the class of persons eligible for the death penalty, but also to guide the discretion of the sentencer in deciding whether or not to impose the death penalty. Regarding the latter, as required of a jury in Oklahoma, a jury in Mississippi is required to weigh statutory aggravating circumstances against mitigating circumstances in deciding whether to impose the death penalty once a defendant has been convicted of a capital offense. Miss.Code Ann. § 99–19–103 (Supp.1987). Thus, like the aggravating circumstance in Oklahoma, the aggravating circumstance in Mississippi's capital sentencing scheme "plays a critical role in guiding the discretion of the sentencer" in determining whether an individual defendant is sentenced to life or death. Further, as in Oklahoma, Mississippi provides no method for curing on appeal the improper consideration by a sentencer of an unconstitutional aggravating circumstance.[1] As a result, reliance on an unconstitutional aggravating circumstance by a jury in Mississippi could affect the delicate balance struck by the sentencer in deciding whether or not to impose the death penalty. I am persuaded, therefore, that this Court, like the Tenth Circuit in *Maynard,* must consider Stringer's assertion that the "heinous, atrocious, or cruel" circumstance as applied under Mississippi law is unconstitutionally vague.

On this question, it is noted that, in light of the recent holding by the Supreme Court in *Maynard* that the especially heinous aggravating circumstance is facially unconstitutional, any further inquiry in this area is limited to determining whether or not Mississippi applies a limiting construction of the especially heinous aggravating circum-

1. The majority opinion points to the fact that the Mississippi Supreme Court, on appeal, reviews whether or not a sentence of death is imposed under the influence of passion, prejudice, or any other arbitrary factor; whether the evidence is sufficient to support the jury's finding on each statutory aggravating circumstance; and whether the sentence of death is not excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant. *Majority Opinion* at slip opinion p. 1303, at p. 1114. This type of appellate review, however, is not sufficient to cure on appeal the consideration by a sentencer of an invalid aggravating circumstance in weighing statutory aggravating and mitigating circumstances to determine whether or not to impose the death penalty on a particular defendant. Rather, as recognized by the U.S. Supreme Court in *Wainwright v. Goode,* the type of appellate review which would have a curative effect in such a situation is that review pursuant to which an appellate court independently rebalances only the valid aggravating circumstances found by the sentencer against the mitigating circumstances to determine if the death sentence is valid. *Goode,* 464 U.S. at 86–87, 104

S.Ct. at 383–84. In fact, in *Cartwright v. Maynard,* the Tenth Circuit en banc rejected the proportionality review conducted by the Oklahoma Court of Criminal Appeals in that case as a justification for upholding the validity of the death sentence where the sentencer considered an unconstitutional aggravating circumstance. In doing so, the Tenth Circuit noted that Supreme Court decisions do not in any manner suggest "that a proportionality review [can] serve as an independent basis for upholding a death sentence imposed after reliance upon an unconstitutional aggravating circumstance." *Cartwright,* 822 F.2d at 1481 n. 3.

Therefore, since Mississippi, like Oklahoma, does not provide a method for curing on appeal the improper consideration by a sentencer of an unconstitutional aggravating circumstance, the appellate review which was conducted by the Mississippi Supreme Court of Stringer's death sentence in the instant case cannot cure the jury's reliance upon the unconstitutional especially heinous aggravating circumstance in arriving at its decision to sentence Stringer to death.

stance in reviewing a death sentence on appeal. In this connection, this Court, in *Johnson v. Thigpen,* 806 F.2d 1243, noted that the Mississippi Supreme Court, in *Coleman v. State,* 378 So.2d 640 (Miss. 1979), had indeed adopted a limiting construction of the especially heinous aggravating circumstance to be applied in conducting appellate review of death sentences. However, in reviewing Mississippi's actual application of the limiting construction adopted in *Coleman,* this Court in *Johnson* concluded that:

> [T]he Mississippi Supreme Court has not consistently applied its *Coleman* limiting construction of the especially heinous aggravating circumstance. The limiting construction we found in *Gray [v. Lucas,* 677 F.2d 1086 (5th Cir.1982)] had been adopted in *Coleman* appears now to be more honored in breach than observance.

*Johnson,* 806 F.2d at 1247. Despite recognizing that the Mississippi Supreme Court no longer applies a limiting construction to the especially heinous aggravating circumstance, this Court upheld the death sentence imposed in *Johnson* as constitutionally permissible on the basis that the remaining valid aggravating circumstances serve the constitutional requirement of narrowing the class of persons eligible for the death penalty under the Mississippi capital sentencing scheme. *Id.* at 1248. Further, the Court in *Johnson* concluded that even if error was present due to the broadened construction of the especially heinous aggravating circumstance, it was error under Mississippi, and not federal law, and thus, an error of state law not cognizable on habeas corpus review. *Id.* at 1249.

Since *Johnson,* however, the Supreme Court has decided *Maynard v. Cartwright.* *Maynard* now teaches that the especially heinous aggravating circumstance is unconstitutionally vague in violation of federal, not state law. Therefore, any error in this regard is cognizable by this Court on habeas corpus review. Moreover, as observed by this Court in *Johnson,* the Mississippi courts no longer apply a limiting construction to the especially heinous aggravating circumstance to cure on appeal the sentencer's reliance on an unconstitu-

tional aggravating circumstance in determining whether to impose the death penalty. *Id.* at 1247. Relying on the fact that "the Oklahoma Court of Criminal Appeals would not attempt to save the death penalty when one of several aggravating circumstances found by the jury was found invalid or unsupported by the evidence," the Supreme Court in *Maynard* declined to adopt such a saving construction of the especially heinous aggravating circumstance in the first instance and instead deferred to the state courts to rule initially on the issue. *Maynard,* — U.S. —, 108 S.Ct. at 1860. This Court should do likewise.

Returning full circle to the point first noted by this dissent, this Court is now bound by the recently issued opinion of this Court in *Edwards v. Scroggy,* which rejected *Maynard* as a basis for habeas corpus relief concluding that Mississippi law is clear that one invalid aggravating circumstance will not suffice to overturn a death penalty where other valid aggravating circumstances remain. Setting aside for the moment the fact that the *Edwards* Court did not address the critical issue of the validity of a death sentence imposed pursuant to a balancing which includes consideration of an unconstitutional aggravating circumstance, the *Edwards* ruling does not foreclose Stringer's argument on this issue in the instant appeal. Stringer's argument is not foreclosed due to the fact that Mississippi law has created at least one exception to the general rule stated in *Edwards* regarding the effect of a sentencer's consideration of an invalid aggravating circumstance on the validity of a death sentence. Specifically, the Mississippi Supreme Court has, at least on one occasion, stated that it would "eschew" a harmless error analysis in a situation where a prosecutor has argued an invalid aggravating circumstance to a jury as a justification for imposing the death penalty. *Johnson v. State,* 511 So.2d 1333, 1338 (Miss.1987), *rev'd on other grounds,* — U.S. —, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988). In *Johnson,* the prosecutor argued to the jury as a justification for imposing the death penalty a previous conviction of Johnson

which was later determined to be invalid. In rejecting a harmless error analysis under the facts of the *Johnson* case, the Mississippi Supreme Court relied on the fact that the "district attorney argued this particular aggravating circumstance as a reason to impose the death penalty." *Id.* This decision by the Mississippi Supreme Court to refrain from applying a harmless error analysis was cited with approval last term by the Supreme Court in *Johnson v. Mississippi*, — U.S. —, 108 S.Ct. 1981, 1989 n. 8, 100 L.Ed.2d 575 (1988).

In the instant case, as in *Johnson*, the prosecutor vigorously argued as a justification for imposing the death sentence on defendant James Stringer the fact that the instant crime was especially heinous, atrocious, and cruel. In this regard, the prosecutor stressed repeatedly to the jury that if they should find only one aggravating circumstance to outweigh any mitigating circumstances, then the verdict should be the death penalty. Proceeding in such a fashion, the prosecutor then apparently showed photographic slides of the crime to the jury, describing in detail the facts of the murders and asking of the jury "Is that atrocious? Is that cruel?" This argument by the prosecutor certainly raises a question as to whether, under Mississippi law, Stringer would be entitled to a resentencing due to the jury's consideration of the unconstitutionally vague especially heinous aggravating circumstance. Moreover, it is highly suspect that the Mississippi capital sentencing scheme continues to channel the sentencer's discretion by "clear and objective standards" where an unconstitutionally vague aggravating circumstance is vigorously argued to the jury as a justification for imposing the death penalty. *See Godfrey v. Georgia*, 446 U.S. 420, 428, 100 S.Ct. 1759, 1765, 64 L.Ed.2d 398 (1980). Therefore, contrary to the conclusion reached by the majority today, this Court's decision in *Edwards* does not foreclose Stringer's request for habeas corpus relief in the instant appeal. Mississippi law is not well settled on the aspect of a jury's consideration of an invalid aggravating circumstance in a capital sentencing proceeding where that circumstance has been vig-

orously argued to the jury as a basis for the death penalty. Accordingly, I would remand the instant proceeding to the state courts for a redetermination of Stringer's sentence.

As a final note, I would harken back to the previously mentioned fact that this Court has consistently declined to recognize or address the vital issue of the effect on the validity of a death sentence of a jury's consideration of an unconstitutional aggravating circumstance pursuant to a capital sentencing scheme which requires a sentencer to *balance* all statutory aggravating circumstances against all mitigating circumstances in deciding whether or not to impose the death penalty. For the reasons set forth by the Tenth Circuit in its en banc opinion in *Maynard* and discussed more fully above, I would conclude, and urge this Court to also conclude, that the consideration of an unconstitutional aggravating circumstance under a capital sentencing scheme which requires a jury to balance aggravating and mitigating circumstances and which is not effectively cured on appeal must be vacated under the eighth and fourteenth amendments. It is absolutely imperative that a death sentence not be imposed pursuant to a sentencing process which fails to protect against the imposition of our most severe and final punishment in an arbitrary or capricious fashion.